UNITED STATES DISTRICT COURT  
DISTRICT OF NORTH DAKOTA                ss

# AFFIDAVIT

I, Christopher Potts, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since September 2018. I am currently assigned to a squad that investigates violent crime, assaults on federal officers, narcotics distribution, and crimes against children in Indian Country. Before working crimes in Indian Country, I spent approximately two years investigating gang-related crime in Chicago, IL. I have experience in investigating counter terrorism matters including threats of violence against federal officers.

2. This affidavit is submitted in support of a criminal complaint alleging that, on or about August 25, 2025, **CARLOS JOSE GUZMAN PINEDA** forcibly assaulted, resisted, impeded, intimidated, and interfered with, two federal officers, while they were engaged in on account of the performance of official duties. The assault involved physical contact with the victims of the assault and was in violation of Title 18 U.S.C. § 111(a)(1).

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging **CARLOS JOSE GUZMAN PINEDA** with violating Title 18 U.S.C. § 111(a)(1). I have not included each and every fact known to me concerning this investigation.

4. The facts in this affidavit come from my personal observations and knowledge, my training and experience, and information obtained from other law enforcement personnel.

## PROBABLE CAUSE

5. On or about August 25, 2025, I was notified of a potential assault against two Border Patrol Agent – Intelligence (BPA-I) personnel who were assaulted during a traffic stop of individuals who they believed may have been in the country illegally. I reviewed a "Border Patrol Report of Apprehension or Seizure" form that was drafted by BPA-I Dalton Lebow. The report describes the incident and the assault that occurred during the apprehension of the subject. I have included summarized portions of the report below:

   a. On or about August 25, 2025, BPA-I Lebow and BPA-I Raymond Ritz were conducting their assigned intelligence duties in their unmarked government vehicle that was equipped with emergency equipment. At approximately 0951, BPA-I Lebow observed three individuals a parking lot in Grafton, North Dakota. BPA-I Lebow noted that one of the individuals matched the physical description of an individual who fled from law enforcement on August 21, 2025, in Park River, ND. Based on recovered documents and record checks, BPA-I personnel believed that the observed individuals were in the United States illegally.

   b. BPA-I personnel began conducting surveillance in the parking lot

2

of the AmericInn and requested additional law enforcement assistance from the local agencies.

c. Following a traffic violation, Grafton Police Officer John Grossbauer initiated a traffic stop on the vehicle and told BPA-I Lebow that the vehicle had failed to come to a complete stop at a stop sign.

d. BPA-I personnel remained in their vehicle while Officer Grossbauer conducted his investigation. Officer Grossbauer contacted BPA-I Lebow and provided images of the occupants' identification. The driver, ELISEO AGUIRRE-JAIMES provided a Texas driver's license. The front seat passenger, YUNIOR JOSUE ZEPEDA-SANCHEZ provided a Honduran passport, and the back seat passenger, GUZMAN-PINEDA, provided an El Salvadorian passport.

e. BPA-I Lebow contacted his dispatch personnel to confirm the immigration status for the individuals in the vehicle. BPA-I Lebow donned his body armor with visible badge and official Border Patrol markings. BPA-I Lebow activated his body-worn camera and approached the traffic stop. BPA-I Lebow identified himself as a United States Border Patrol agent and asked the backseat passenger for his name. GUZMAN-PINEDA responded with "Carlos Guzman." GUZMAN-PINEDA told BPA-I Lebow

3

that the only documentation he had in his possession to show his legal status was his passport. GUZMAN-PINEDA told law enforcement that he was in the country legally.

f. BPA-I Lebow was informed by his dispatch that GUZMAN-PINEDA had no immigration history, but an immigration detainer had been placed on him.

g. BPA-I Lebow notified BPA-I Ritz that GUZMAN-PINEDA was to be arrested based on his immigration status. Three law enforcement officers approached the vehicle and GUZMAN-PINEDA was asked to exit. GUZMAN-PINEDA complied and was asked to place his hands on the vehicle. GUZMAN-PINEDA asked agents "why?" and was told by BPA-I Lebow that he was under arrest.

h. GUZMAN-PINEDA began to pull away. BPA-I Ritz told him to remain calm on several occasions. GUZMAN-PINEDA began resisting by grabbing the open door of the vehicle to prevent law enforcement from restraining him. GUZMAN-PINEDA then began to drive his body into BPA-I Lebow. GUZMAN-PINEDA broke BPA-I Lebow's grip and ran past him to the outer wall of an adjacent building. BPA-I Lebow turned toward GUZMAN-PINEDA and grabbed him around the shoulders and head.

i. BPA-I Lebow and Officer Grossbauer were able to wrestle

GUZMAN-PINEDA to the ground. At that time, ZEPEDA-SANCHEZ opened the door of the vehicle and fled on foot. BPA-I Ritz began to pursue ZEPEDA-SANCHEZ.

j. GUZMAN-PINEDA continued to resist by pushing BPA-I Lebow to the ground. As BPA-I Lebow tried to regain his feet, he felt GUZMAN-PINEDA's arm around his head and neck. BPA-I Lebow attempted to break away from GUZMAN-PINEDA's grip while turning away and then delivered a strike to GUZMAN-PINEDA's face with his fist. BPA-I Ritz returned to the scene while the struggle was ongoing. GUZMAN-PINEDA had his hands balled up into fists and, while attempting to break away from law enforcement officers, attempted to punch at all three officers. BPA-I Lebow was able to grab an arm in a continued attempt to restrain GUZMAN-PINEDA.[1]

k. The officers were able to grab both of GUZMAN-PINEDA's arms. At one point, BPA-I Lebow lost his grip on GUZMAN-PINEDA's arm and grabbed his head in an attempt to pull his body to the ground. The officers were eventually able to place GUZMAN-PINEDA into the prone position. BPA-I Ritz and Officer Grossbauer were able to place GUZMAN-PINEDA's hands behind

---

[1] BPA-I noted that GUZMAN-PINEDA was very strong and was continuously resisting and trying to pull his arm free from officers.

his back and handcuff him. GUZMAN-PIENDA was searched and placed into a law enforcement vehicle.

l. A responding Grafton Police Officer informed BPA-I Lebow that he had blood stains on the sleeve of his shirt. Officer Grossbauer informed BPA-I Lebow that felony charges would be filed against GUZMAN-PINEDA for the assault.

m. GUZMAN-PINEDA and ZEPEDA-SANCHEZ were both taken into custody by Border Patrol Agents for further processing.[2]

6. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about August 25, 2025, in the District of North Dakota, **CARLOS JOSE GUZMAN-PINEDA** forcibly assaulted, resisted, impeded, intimidated, and interfered with, two federal officers, while they were engaged in or on account of the performance of official duties. The assault involved physical contact with the victims of the assault and was in violation of Title 18 U.S.C. § 111(a)(1).

Respectfully submitted,

CHRISTOPHER POTTS
Special Agent
Federal Bureau of Investigation

---

[2] Neither law enforcement officers nor GUZMAN-PINEDA required any medical treatment. GUZMAN-PINEDA declined medical assistance when asked by officers.

Sworn to and affirmed by telephone on August 27, 2025.

_____
Alice R. Senechal
Magistrate Judge
United States District Court
North Dakota